Thank you, Your Honor, and may it please the Court. My name is James Dickey of the Upper Midwest Law Center, and I'm here on behalf of the appellants. Government employers must safeguard the constitutional rights of employees exposed to potential constitutional waiver. ISC 191 failed to do that when it deducted dues from appellants without clear and compelling evidence of their consent, and we thus ask this Court to reverse the district court and remand. While this Court in Hokeman held that government unions themselves are not state actors, where their relationship with employees is based only on a dues checkoff agreement, it did not reach whether a government defendant would be subject to First Amendment scrutiny. What circuit court has reached that question? Reached the question or answered the question? I don't believe that they actually have. Well, hint it then. What's that? You don't have anything. What court supports your position that Janus applies to dues-paying union members? Well, the Seventh Circuit in the Janus II case dealt with the issue of who is a state actor. That's as close, I think, as we have to other circuit court cases. We're asking this Court to exercise its independent judgment. But the opinion in Janus explicitly says it's not covering that question. On that front, Your Honor, I'd respectfully disagree. I think that the Janus Court says, uses the phrase employees when it refers to the First Amendment scrutiny to be applied. It also says any other payments to the union. And it also says, quote, by agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. That's not the point. What about the subject of that sentence, counsel? Excuse me? That's what I have trouble with, is the subject of the sentence, which is the word nonmembers. These are all members. Well, they were not members until they signed the agreement. And so Janus' quote there, where it says, nonmembers are agreeing to pay, refers back to the time where they are setting up to actually sign those documents, their first day of work maybe, for the first time. And so at that point, there is still a waiver. The question, there's a presumption that there is no constitutional waiver, and there to determine whether or not it actually happened. And in this case, we're dealing with the government defendant. And as it's the government defendant at issue here, it's not the government defendant who's actually receiving the money. They're deducting the dues so that the union then obtains that money. They have, as I believe is analogous under the Supreme Court's decision in Hudson Well, they deducted pursuant to an agreement with the unions to which the plaintiffs were not members. The plaintiffs agreed with the union to that procedure. The plaintiffs And the state law permitted that array, that pair of contracts. I don't see the state action or the coercion or the refusal to protect government employees in that arrangement. Well, first, Your Honor, I would say that there actually is coercion in that the option that a nonmember has at the time that they sign these agreements is either They're not even members now. Right. But looking back at the time the document was signed, you're talking about that document being a private relationship between the union and the employee. They were members when they signed the document. They They voluntarily decided to be members. I disagree, Your Honor. I don't think it's fair to say that they voluntarily decided to be members unless there's clear and compelling evidence of that. And I don't think the document Wait. What is the evidence to the contrary? The evidence Evidence that I was coerced, is there? When I signed, when I knew I had the right under state law to be a member or not to be a member, and I put my hand up, I want to be a member and signed. Where is the evidence of coercion? The coercion is that at the time that they are signing these documents, they had before Janus, they had two choices. They had either pay the union as a nonmember, pay the union more as a member, or don't take the job. You can't work here. That is coercive because no matter what you do Why? Because you have to pay the union no matter what. So you're always But you have a choice as to how much you pay. And now you want to recover the noncompulsory part, or the part for which there was no compulsion whatsoever. Well, as this Court analyzed somewhat, although it wasn't directly on point, I think, in Hokeman, there is an arguable distinction between the noncompulsory, as you call it, and compulsory part. And so even then, our clients would be entitled to the compulsory part, if that's the type of language you think is appropriate to use for it. I think The part that the nonmembers recovered. Right. Exactly. That's right. The nonmembers Unless there was good faith. Well, then that's the question as it applies to the union defendant, whether there's a good faith exception. There's Now, if the unions relied in good faith on State law, why didn't the school district? Because That's like night following day. Well, the school district and the union are either one's a government actor, one's a private actor. So you have different defenses applicable to each. There are various government actors, not for State action purposes necessarily. Well, in the State action analysis itself, this is the government, which is That's a different question. Right, right. But the school districts rely on what the State legislature has authorized or permitted. Or required. Because they have to honor the dues commitment of the, the supposed dues commitment of the member under 179A.13, subdivision 2-1. They can't, quote, interfere with the arrangement for dues checkoff. That's only if the plaintiff voluntarily elected to be members. But again, we're getting right back to the question of whether or not that was voluntary in the first place. What's your best evidence that it wasn't? What's real evidence of real coercion here? The evidence of coercion Testimony or documents or what? Well, first, we're in a motion to dismiss, but we don't have any What did you say? Go ahead. That just states it differently. What did you say about Judge Logan's question? Yeah. What did you say about coercion? The answer is what I already mentioned about the situation that they are in at the time they signed the agreement. They show up their first day of work. They're given a bunch of papers. They said you have to sign this. You have to be part of it. You either can be a member or pay an agency fee. And so it's either pay the union or pay the union more. And in our view, that is the coercion that leads to the determination that there must be a there actually has to be additional evidence of a clear and compelling agreement. I thought it was pay the union or pay the union less were the two choices. You said pay the union or pay the union more. Right. So pay the union. Well, you pay the union as a nonmember agency fee at the time. It's a lower amount, right? A lower amount. Yeah. Right. Okay. It is. It is. And you only have the identity as being a union member. I think it's 80 percent for the nonunion fee. Right. Right. Something like that. That's the reason I didn't understand your more. Oh. So it's just a different way of looking at it. No. For sure. Now, let me ask you a more literal question. The previous panel of this Court in Oakman said the terms of the employee's union membership, not any State action, not any, I'm quoting, not any State action that create the employee's obligation to pay a union's right to collect. Doesn't that just control this case? No, Your Honor. I don't think it does. Okay. Tell me. Is that the superficially relevant dicta you referred to? Well, I think that it is dicta in that it is your – I think this Court tries to avoid dicta at all costs, first of all. But I think it's dicta in that you're talking about State action for a private defendant itself. You're not talking about – the question was whether or not under Section 1983, the union could be considered a State actor in the Hoekman case at that part you're referring to. The fact – it is certainly, as this Court – we don't dispute the Hoekman case except to preserve our potential appeal rights. Extremely well-written opinion. Yes. Yes. Of course. By Judges Loken and Collinson on the panel, of course. Extremely well-written. And – but regardless of that, that case was focusing on the union defendant, not on the government defendant, because there were no government defendants. The question of State action, I believe, is resolved by the very fact that in this Court's precedence in the District of Minnesota, which this Court has cited approvingly in the Brendan case, that independent school districts are State actors for purposes of Section 1983. And so, therefore, the First Amendment does apply to their actions in actually taking the dues from the paycheck, regardless of what private agreement exists. And I'd also like to note, Your Honor, that we do think that the Chicago Teachers Union v. Hudson case is analogous to this case, such that the government employer must affirmatively safeguard the constitutional rights of employees. We are suggesting a simple follow-up communication. We are going to deduct dues from you based on this agreement. Did you sign this agreement? And did you consent to these dues? And the problem with the union's agreement right now is that it says, I voluntarily acknowledge that I'm going to be paying dues. But it doesn't mention anything about their First Amendment rights or give them any notice of what they would be giving up if they signed the dotted line. So we don't think that there's enough in the agreement itself to justify the government relying on that document in order to arrive at the conclusion that dues must be deducted. I also — I'm sorry, I thought I — No. I also think that the — again, the signature on paper here is not sufficient under Janus. It's not clear and compelling evidence of a waiver. And because there is a presumption of a — What language in Janus suggests that the waiver analysis applies to union members? I think the quote that by agreeing to pay, nonmembers are waiving their First Amendment rights, at the moment they agree to pay, they are becoming members by signing that document. And that's where Janus focused on, that relationship at the moment of its conception. The non — they never became members. They agreed to pay the compulsory fees that Janus said was unconstitutional. I don't think that Mark Janus — So where does the waiver analysis lie? I don't believe — Now, Janus says, Part 7, first sentence, for these reasons, states and public sector unions may no longer extract agency fees from non-consenting employees. That was the holding. Yes, Your Honor. This procedure violates the First Amendment and cannot continue. That's the extent of what Janus decided. And those non — and I'm running into my rebuttal, but does non-consenting members include those who signed up under coercion, as we've discussed? I mean, you're making that up in terms of the Janus opinion. I don't know. I don't think so, Your Honor. I think that based on what you just read, when we're talking about what does it mean to be non-consenting, that is who we're talking about, those who signed these agreements. Non-consenting employees, they meant those who chose not to join the union, period. But again — That's the whole focus of the anti-Abood revolution, so to speak. But again, Your Honor, I point back to the language that the Court focused on. By agreeing to pay, those are the people who actually would agree, as opposed to those who never agreed and had the money taken from them anyway. So I'm running out of rebuttal time, and I'd like to reserve the remainder. I have a question on your last argument. Yes, Your Honor. Why is the timing of withdrawal, of plaintiff's withdrawal, and its impact on when the prospect of Janus relief, if you will, kicked in, why is that anything other than a non-federal contract claim? The timing of the withdrawal from the agreement itself? Yes, that they had to wait until July or November instead of February. Well, because they're still — they are revoking any consent that existed in the first place, and so there's a First Amendment right. Well, it has nothing to do with the First Amendment. They knew what the contract said, and they chose not to, you know, they chose — well, they're trying to take non-contractual advantage of Janus vis-à-vis timing. No, Your Honor, I think that they're — Once they have revoked any consent, that's why we analogize this to other — What's the First Amendment issue? Well, like in other cases of constitutional waiver, once the — even if you assume that First Amendment rights have been waived by signing the membership agreement, once that agreement — once the terms there have been revoked by the person who signed the agreement, there's no longer any — they revoked any consent that existed. Give me a case that even hints that that's a First Amendment, not a contractual issue. Well, we have analogized it specifically to cases like Fourth, Fifth, and Sixth Amendment rights waiver, and we think those are the most appropriate. I don't have a specific case on the First Amendment for you. Okay. Thank you, Your Honor. Mr. Pitts? Good morning. May it please the Court. Casey Pitts. I am counsel for the appellee SCIU Local 284. Also at counsel's table today is Carrie Dolan, who represents Independent School District 191, but I will be presenting argument for all appellees in this appeal. As the Court recognizes, the relationship here was a voluntary relationship between the plaintiffs and their union. The plaintiff — each of the plaintiffs entered into a voluntary agreement. They could have pled coercion, though, right, with facts? They've said there was coercion based on specific facts. One is that before Janus, the Janus decision, there was a requirement to pay agency fees. But the Court has made clear — the United States Supreme Court has made clear that that kind of change in the law doesn't undo a contractual agreement. That was the issue in the Brady v. United States case in which the Court held that even though an individual had entered into a plea bargain in order to avoid the death penalty, which he would have been exposed to had he not pled guilty, that plea bargain remained valid even after the Court determined that the statute under which he faced the death sentence was unconstitutional. So if the courts will enforce a plea bargain made under the unconstitutional threat of death, it's very clear that an agreement here to become — a voluntary which was to not be members, and a consequence of that would have been to pay agency fees. That doesn't constitute the kind of coercion that can undo an agreement. These agreements remain enforceable. These individuals all had the choice not to join the union. They chose — chose to join the union. And crucially, all of the dues that they paid flowed from that choice. You cannot decouple the union dues in some sense, some compulsory or noncompulsory portion. Every union member has an obligation, if they choose to be union members, to pay the entire amount of the union dues. That remains the case now. That was the case before the Janus case. So they were not coerced by virtue of the agency fee requirement. They don't like the — Well, the timing issue did not necessarily, you know, flow from that. Excuse me? If the timing issue is a First Amendment issue, it does not flow from the fact that they agreed to join the union some years sooner, earlier. Well, they certainly — they continued to pay agency fees for a number of years. On the withdrawal issue. Right. They withdrew several years after the Janus opinion. So, in fact, they continued to pay these membership dues for several — for at least a year, more than a year, almost two years after Janus was decided. So even in that time period, which is a significant portion of the period we're talking about here, they were paying — they were paying full membership dues, and there was no agency fee requirement in place. And, in fact, one of the plaintiffs rejoined the union after Janus and was held to her commitment that she made after the Janus decision. So — but the core point here is that the courts have not recognized this as the kind of coercion that allows an individual to get out of a private agreement. And that goes to the core issue here, which is — which Judge Benton recognized, which is this case is controlled by the Hochman case. The Hochman case recognized that the source of the harm at that issue in all of these cases is the private agreement between the individuals and their union. Thank you for the compliment. But my problem, my issue that I want you to tackle is the statement — or the citation to Johnson v. Zurst. You well know about it. And when it says, a waiver cannot be presumed, and then follows Johnson v. Zurst, it sounds like they are putting a Miranda warning kind of requirement on you, or some kind of warning, or some kind of acknowledgement, so you don't just run the papers by them and get them to sign it. No. The court in Janus itself makes it clear what they're talking about. And what they're talking about is affirmative consent, is that you need an And, again, as the Court has recognized, that portion is about nonmembers, not members, so that is a separate reason. But even if we go to the realm of what's required of nonmembers, what the Court is requiring is affirmative consent. All of the cases that are cited in that footnote are cases where the question was, could you find waiver from inaction or silence, where the individuals hadn't done anything, let alone entered into a contract with another party, voluntarily entered into a contract with another party to receive the benefits here of union membership in exchange for their payment of dues. What about the next sentence? Waiver must be freely given and shown by clear and compelling evidence. Doesn't that get you by 12b-6? It does not, because they've included in this case, and there are cases where they have, where there hasn't been a reference to the underlying agreement, and that there's a question of whether you can bring the agreement in on the record. Here, they've alleged that there was an underlying agreement. The Court properly recognized that those agreements are part of the 12b-6 record, and they haven't challenged that holding. And that, that contains their signature. They don't contend that they were under duress in the sense that their will was overborn or they were being threatened. When they made that, when they put that signature on a piece of paper, which is in the record, and it says, and they don't contest it, they misunderstood, that it said we voluntarily and authorize union due seductions. First, we voluntarily choose to join the union, and something that flowed from that, we voluntarily authorize due seductions. The second time the Supreme Court uses the term affirmatively, they put clearly ahead of it, and less employees clearly. They don't have clearly the first time. That was your argument to me a moment ago. Well, I — But the second time, they add, and less employees clearly and affirmatively. Right. And there's not, there cannot be something clearer than a, than the agreements that were signed here that authorized the dues deductions, that issue. It would be a revolution in contract law to say that any contract that, that implicates First Amendment rights has to contain some sort of Miranda-style waiver of, you know, First Amendment rights. You know, every, every arbitration agreement, for example, is obviously limiting the First Amendment right to petition the courts by requiring you to resolve your disputes outside of court and not go to court. Certainly, it's never been suggested that every arbitration agreement has to contain a Miranda-style waiver. And I don't think, there's no reason to think that that's what the Court was trying to do to contracts that implicate First Amendment rights in this portion of Janus, which, as the Court has noted, specifically was about nonmembers and really was about presumption. I think the way to think about it is that that portion, I think that portion of the opinion directly goes back to the Knox opinion. And the question in the Knox opinion, one of the issues in the Knox opinion, was whether you can use an opt-in versus an opt-out system for nonmember payments. And the Court said, with respect to the political assessment at issue in Knox, that an opt-out system was impermissible, that every member had to opt-in to that system. And that, in this, in that system, a member who received something and said, would you like to opt-in to paying this amount and signed a document saying that, that would satisfy the requirement. It would not require. And the core point here, what I think the Court was doing in that portion of Janus is saying, you can't, after today, you can't use an opt-out system for any aspect of agency fees. You can't say — It's a state law that acted opposite Janus. Right. That is still on the books. It certainly is. Oh, it still is. So five years later. Right. And I don't believe there's any contention that any union or public employer has not complied with Janus. I think it's on the books and being ignored. Whether, you know, some legislatures have gotten rid of it, some have recognized that the Supreme Court's decision effectively makes that law invalid. You know, that's a question for the legislation. It's certainly the case here that the day, as it, you know, every public employer, including the public employer here, the day that Janus was decided complied with a Janus decision and stopped agency fees. But I — so I — that, you know, Janus doesn't apply for both of those reasons. As the Court has said, it's about nonmembers, not members. Two of the three individuals here were members. The record shows that they were members at the time they signed the agreements at issue. In fact, they became members in the late 90s. Ms. Burns and Ms. Tominson became members in the late 90s. These were a renewal of their memberships under new terms. So they — even they — they were members at the time to enter into the agreement indisputably. But again, the point is — the point is that even — even asking nonmembers, the point is you need something beyond silence in action, that you need an opt-in, and you can't presume in the absence of that that they want to support the union. Again, though, I want to turn back to this Court's opinion in Hokeman, which — which did say that the — that the claims here fail because the source of the harm is the private agreement between the parties, and it is not the — it is not any form of State action. That's a private agreement. It's — it is — does not implicate the First Amendment. It cannot be the basis for a Section 1983 claim. And the fact that it is not limited to private defendants, as — as my colleague contends, is made clear that Hokeman based its — its holding on Blum v. Uletsky, the Supreme Court's crucial decision on the State action requirement in Blum v. Uletsky. Blum v. Uletsky was a case against public officials. It was not a case about a private party. It was a case about public officials. And even in that case — Sotomayor, you're talking so fast. I'm sorry. Okay. So this Court's decision in the Hokeman case, it was premised on Blum — Jump to another case. So it was premised on the Supreme Court's decision in Blum v. Uletsky, and that was a case against public officials. That was a case against two public — against a number of public officials responsible for the Medicare — Medicaid support for nursing homes. And the Court said this does not state a valid Section 1983 claim against these public officials because the source of the harm is the private decisions, in that case of nursing homes, about transferring people to higher or lower levels of care. And the government defendants here simply respond to that decision in a ministerial fashion. And that does not state a Section 1983 claim. That was the decision that was the basis for the Hokeman holding. Hokeman — and Hokeman said the same is true here. The harm arises from the private agreements, not from — There was State action here. I don't understand. No State action here. What was the State action in Hokeman, then? There was not — the finding in Hokeman was that there was no State action as to this issue. So there was a separate — there were claims in Hokeman brought by agency fee payers. And there's no question that in the context of an agency fee system, the government is compelling nonmembers who've never agreed to join the union to pay money to the union. That — that constitutes State action. And it's indisputable. We would not dispute that question. But — but, sir, the Court first held there's State — I mean, the Court didn't decide that — You're saying that Hokeman — Hokeman didn't need to talk about the good-faith issue? No. Hokeman did because for agency fee payers, there is State action. But the — the good-faith defense precluded their damages claim on that basis. I understand the extra State. I don't understand why the State action issue turns on union membership. Because in one instance, with respect to agency fee payers, the government is compelling nonmembers, entirely against their will, to pay money to a union. That is how agency fees worked. Abood said that was possible. Janus says it's not. It's compulsion. In the second instance, there is a private agreement between a union and their members that those members will join the union, pay membership dues, and have those dues paid via dues deduction, which is the norm, you know, in the private — in private industry as well as in the public industry. It's the norm for paying union dues around the country. But the source of what Hokeman says is that the source of their payment of dues and any harm that they allege flows from that is their own private agreement with the union. It's not the government. The government, at most, ministerially responds by implementing those dues deductions. And that's exactly the case in Blum v. Uretsky with respect to the government's response to the nursing home's decisions about levels of care. And in Blum v. Uretsky, the Supreme Court said there's no State action here to support it in the Section 1983 claim. And that is the same — it's the same holding this Court made in Hokeman with respect to that issue in the language that was cited. It's the first — it really goes to the first prong of the Lugar test rather than the second prong. You know, did the harm here arise from something that has its source in State action? And the Court in Hokeman said no. The harm, if there's harm here, arises from private — the private agreement between the parties. That doesn't mean that there's no potential remedy. It means that the remedy rests in State law. In this case, there may be a contract claim if there's a violation of the contract by either party. There may also be a State unfair labor practices claim against the union if it's — if it's violating State law in that sense. But the remedy, because it sources a private agreement rather than State action, rests in State law. The final point I just want to make with the amount of time I have left, I want to make it clear that the Supreme Court has made it clear that there's no basis, as I said earlier, for undoing the bargain here, and also that enforcing this bargain doesn't implicate or violate the First Amendment. Now you're talking Janus? Well, now I'm talking — the question of after, you know, given that Janus changed the law, does that allow them to get out of their agreement, or is there a concern? And as I made clear in the Brady case, the Court says a change in the background law doesn't allow you to get out of a contractual agreement simply because the law has changed in the background, which is all that has happened here. And the Supreme Court in the Cohen v. Cowles media case makes it clear that enforcing a private agreement does not constitute — does not violate the First Amendment, even if the interests at stake involve First Amendment interests. In that case, the question was whether the Minnesota courts could enforce on a promissory estoppel theory a news company's promise not to disclose the entity of — disclose the identity of an informer with respect to an ongoing election. It's sort of core — the core of the First Amendment is the press reporting on our political events. And the Court said, yes, that may be — that's core First Amendment activity, but this — they made a — these private parties made an agreement, and it does not violate the First Amendment to enforce that agreement. That's — that's essentially what is going on here. Plaintiffs do not want to abide by the terms of their agreement. The Court has made it clear that that is not a First Amendment issue. It's a private issue. You know, when you said — I thought you said Cohen. Were you referring to Cohen? Cohen, sorry. I apologize for speaking quickly. Cohen Media? Yes, that's right. Unless the Court has further questions for me, I'll sit down. Thank you very much. Those are pretty old cases. For Rabeau? Again, may it please the Court, thank you for this time. I've got about a minute left, and I just want to make a couple quick points here. One is that, as we've emphasized in the timing issues, Janus undoubtedly applies the time a person is a nonmember and is about to sign that agreement. And that was the focus of the Janus Court when it said that by agreeing to pay at that moment, nonmembers are waiving their rights. That's when there must be clear and compelling evidence of waiver. It doesn't exist in this case. Secondly, resignation itself, which our clients did resign on March 5, 2020, resignation itself means that they are no longer members, and yet they continue to have to pay because of this agreement, what the terms of the agreement say, regardless of whether or not they have a First Amendment right to not pay at that point. And on that front, so we talked — counsel talked about Cohen v. Cal's Media. In our briefing, we addressed Cohen and why it's not applicable here. Cohen dealt with a situation where the defendant tortfeasor was trying to use the First Amendment as a sword to commit a tort with impunity. We're talking about individual employees who have had their money taken from them through what we think is no fault of their own. And as such, again, we'd ask the Court to reverse the district court remand for further proceedings consistent with post-Rule 12 proceedings. Thank you, Your Honor. Thank you, counsel.